IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NETWORK MANAGING SOLUTIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 16-295 (RGA) |
| AT&T INC., and AT&T MOBILITY, LLC, | ) ) | |
| Defendants. | ) ) | |
| | ) | |
| NETWORK MANAGING SOLUTIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 16-296 (RGA) |
| SPRINT CORPORATION, and SPRINT SPECTRUM L.P., | ) ) ) | |
| Defendants. | ) ) | |
| | ) | |
| NETWORK MANAGING SOLUTIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 16-297 (RGA) |
| T-MOBILE USA, INC., | ) ) | |
| Defendant. | ) ) | |

|  |  |  |
|---|---|---|
| | ) | |
| NETWORK MANAGING SOLUTIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 16-298 (RGA) |
| UNITED STATES CELLULAR CORPORATION D/B/A U.S. CELLULAR, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANTS' OPENING BRIEF IN
## SUPPORT OF THEIR MOTION TO DISMISS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
jying@mnat.com

*Attorneys for Defendants Sprint Corporation
and Sprint Spectrum L.P.*

SHAW KELLER LLP
John W. Shaw (#3362)
Andrew E. Russell (#5382)
300 Delaware Avenue
Suite 1120
Wilmington, DE  19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorneys for Defendants AT&T Inc. and
AT&T Mobility LLC*

ROSS ARONSTAM & MORITZ LLP
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
bschladweiler@ramllp.com

*Attorneys for Defendant T-Mobile USA, Inc.*

OF COUNSEL:

Joshua C. Krumholz
Jacob K. Baron
Mark T. Goracke
Yasmin Ghassab
HOLLAND & KNIGHT LLP
10 St. James Avenue
11th Floor
Boston, MA  02116
(617) 523-2700
joshua.krumholz@hklaw.com
jacob.baron@hklaw.com
mark.goracke@hklaw.com
yasmin.ghassab@hklaw.com

2

OF COUNSEL:

L. Norwood Jameson
Matthew S. Yungwirth
S. Neil Anderson
DUANE MORRIS LLP
1075 Peachtree St. NE
Suite 2000
Atlanta, GA  30309-3929
(404) 253-6900
wjameson@duanemorris.com
msyungwirth@duanemorris.com
snanderson@duanemorris.com

*Attorneys for Defendants AT&T Inc. and
AT&T Mobility LLC*

RICHARDS, LAYTON & FINGER, P.A.
Steven J. Fineman (#4025)
Katharine L. Mowery (#5629)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
mowery@rlf.com

*Attorneys for Defendant United States Cellular
Corporation d/b/a U.S. Cellular*


OF COUNSEL:

Douglas I. Lewis
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
dlewis@sidley.com

John P. Wisse
SIDLEY AUSTIN LLP
2001 Ross Ave. Suite 3600
Dallas, TX 75201
(214) 981-3425
jwisse@sidley.com

*Attorneys for Defendant United States Cellular
Corporation d/b/a U.S. Cellular*


July 11, 2016

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES......................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

STATEMENT OF FACTS.......................................................................................................... 3

ARGUMENT............................................................................................................................... 7

      I.      A PLEADING MUST ALLEGE ENOUGH FACTS TO STATE
            A PLAUSIBLE CLAIM.......................................................................................... 7

      II.     NMS' DIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED
            FOR FAILURE TO ALLEGE SUFFICIENT FACTS TO STATE A
            PLAUSIBLE CLAIM FOR RELIEF....................................................................... 9

      III.    NMS' INDIRECT INFRINGEMENT CLAIMS ARE EQUALLY
            FLAWED ............................................................................................................... 13

      IV.    NMS' WILLFUL INFRINGEMENT CLAIMS SUFFER FROM THE
            SAME DEFICIENCIES........................................................................................... 15

CONCLUSION........................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asghari-Kamrani v. United Servs. Auto. Ass'n,*
  C.A. No. 2:15-cv-478, 2016 WL 1253533 (E.D. Va. Mar. 22, 2016) ...............................9, 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................................*passim*

*Atlas IP, LLC v. Exelon Corp.,*
  C.A. No. 15-10746, 2016 WL 2866134 (N.D. Ill. May 17, 2016) ....................................8, 10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................................*passim*

*Dynacore Holdings Corp. v. U.S. Phillips Corp.,*
  363 F.3d 1263 (Fed. Cir. 2004).................................................................................................9

*Eidos Commc'ns, LLC v. Skype Techs. SA,*
  686 F. Supp. 2d 465 (D. Del. 2010) ......................................................................................10

*Endo Pharm. Inc. v. Actavis Inc.,*
  C.A. No. 14-1381-RGA, 2015 WL 5580488, at *3 (D. Del. Sept. 23, 2015),
  report and recommendation adopted, C.A. No 14-1381-RGA, 2015 WL
  7253674 (D. Del. Nov. 17, 2015)...........................................................................................13

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
  575 F. 3d 1312 (Fed. Cir. 2009)..............................................................................................13

*Fifth Market, Inc. v. CME Group, Inc.,*
  C.A. No. 08-520 GMS, 2009 WL 5966836 (D. Del. May 14, 2009) ....................................11

*Fujitsu Ltd. v. Netgear Inc.,*
  620 F.3d 1321 (Fed. Cir. 2010)..........................................................................................9, 11

*Fuzzysharp Techs. Inc. v. NVIDIA Corp.,*
  No. 12-CV-06375-JST, 2013 WL 2249707 (N.D. Cal. Apr. 18, 2013).................................14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
  579 U.S. ___, 136 S. Ct. 1923 (2016) ...................................................................................15

*In Re Seagate Tech., LLC,*
  497 F.3d 1360 (Fed. Cir. 2007)..............................................................................................15

*Incom Corp. v. The Walt Disney Co. et al.*,
  CV15-3011 PSG (MRWx), Civil Minutes – General, D.I. 39
  (C.D. Cal. Feb. 4, 2016) ...................................................................................8

*M2M Solutions LLC v. Telit Comm'ns PLC*,
  2015 WL 4640400 (D. Del. 2015) ...................................................................14

*McRo, Inc. v. Rockstar Games, Inc.*,
  C.A. No. 12-1513-LPS-CJB, 2014 WL 1051527 (D. Del. Mar. 17, 2014)..............................8

*Medsquire LLC v. Spring Medical Sys., Inc.*,
  No. 2:11-cv-04504-JHN-PLA, 2011 WL 4101093 (C.D. Cal. Aug. 31, 2011).......................9

*Metzler Inv. GmbH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ........................................................................8

*MONEC Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012) .............................................................14, 16

*Ondeo Nalco Co. v. EKA Chemicals, Inc.*,
  C.A. No. 01-537-SLR, 2002 WL 1458853 (D. Del. June 10, 2002) ...................................14

*Pragmatus AV, LLC v. Yahoo! Inc.*,
  C.A. No. 11-902-LPS, 2012 WL 6044793 (D. Del. Nov. 13, 2012), report and
  recommendation adopted sub nom. *Pragmatus AV, LLC v. Yahoo! Inc.*, C.A.
  No. 11-902-LPS-CJB, 2013 WL 2295344 (D. Del. May 24, 2013) .......................................2

*Raindance Techs., Inc. v. 10X Genomics*,
  C.A. No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016)................................*passim*

*Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
  C.A. No. 14-1268-SLR, 2016 WL 2904593 (D. Del. May 18, 2016)...................................13

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012)........................................................................13

*Via Vadis, LLC v. Skype, Inc.*,
  C.A. No. 11-507, 2012 WL 261367 (D. Del. Jan. 27, 2012)..................................................10

*Zoetis LLC v. Roadrunner Pharmacy, Inc.*,
  No. CV 15-3193, 2016 WL 755622 (D.N.J. Feb. 25, 2016) ..................................................12

## Statutes

35 U.S.C. § 271.................................................................................................4, 6

35 U.S.C. § 284..................................................................................................15

**Rules**

Fed. R. Civ. P. 8 .................................................................................................................. 1, 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Network Managing Solutions, LLC ("NMS" or "Plaintiff") filed separate but near-identical actions against AT&T, Inc.[1] and AT&T Mobility, LLC ("AT&T Defendants"), Sprint Corporation and Sprint Spectrum L.P. ("Sprint Defendants"), T-Mobile USA, Inc., United States Cellular Corporation d/b/a US Cellular, Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless ("Verizon Defendants") alleging infringement of U.S. Patent Nos. 6,351,213 (the "'213 Patent"), 6,420,968 (the "'968 Patent"), 6,728,688 (the "'688 Patent") (together, the "Network Alarm Management Patents"), and 6,553,099 (the "'099 Patent") (collectively, the "Patents-in-Suit"). (D.I. 1). The next day, NMS filed near-identical amended complaints in each action. (D.I. 4, collectively "Amended Complaints").[2] Defendants[3] have moved to dismiss the Amended Complaints under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. This is Defendants' opening brief in support of that motion.

## SUMMARY OF THE ARGUMENT

NMS' infringement allegations should be dismissed for failing to satisfy the basic pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure. After the abrogation of Form 18, infringement claims must satisfy the pleading requirements of *Twombly* and *Iqbal*. *See*

---

[1] AT&T Inc. is and always has been only a holding company. As a holding company, AT&T Inc. conducts no business with the public and is not the proper entity for the conduct alleged in this case. AT&T Inc. does not design, make, use, sell, offer for sale or import any products. AT&T Inc. is, legally and factually, a separate entity that is distinct from its subsidiaries and affiliates. The proper corporate defendant in this case should be AT&T Mobility LLC. However, AT&T Inc. joins this Motion because it currently is a defendant in this case.

[2] Unless otherwise noted, all docket citations are to C.A. No. 16-296 (RGA).

[3] For purposes of this motion, "Defendants" are the AT&T Defendants, Sprint Defendants, T-Mobile USA, Inc. and US Cellular. Per the Court's July 8, 2016 Order in C.A. No. 16-299, the Verizon Defendants will respond to the Amended Complaint on or before July 21, 2016.

*Raindance Techs., Inc. v. 10X Genomics*, C.A. No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016).  The Amended Complaints do not specifically identify any of Defendants' allegedly infringing products or processes and, further, do not allege facts sufficient to support a plausible claim that Defendants directly infringe the Patents-in-Suit by their implementation of any 3rd Generation Partnership Project ("3GPP") standards.  In fact, NMS does not identify (i) the claims it is asserting (instead relying on a single exemplary claim for each Patent-in-Suit); (ii) how or if the limitations of the exemplary claims are allegedly satisfied by the 3GPP standards; (iii) whether those implicated elements of the 3GPP standards are mandatory or optional elements, or (iv) how Defendants allegedly infringe by practicing those standards.  The direct infringement claims, thus, should be dismissed.

Likewise, NMS' indirect (induced) infringement claims are held to a similar pleading standard[4] and should be dismissed for similar reasons.  NMS' inducement claims should be dismissed because the Amended Complaints fail to allege:  (i) the identity of any third party infringer that directly infringes and was induced by Defendants, and (ii) any specific acts of direct infringement by a third party that was induced by Defendants.  Without having made allegations to satisfy the inducement elements, NMS cannot plausibly claim that Defendants are liable for induced infringement.

Finally, NMS fails to allege a plausible claim for willful infringement.  First, having failed to properly state a claim for infringement, NMS cannot maintain a claim for willful infringement.  Second, NMS does not set forth any facts from which one could draw an inference that Defendants have acted with willful misconduct such that this is an egregious case.  Simply

---

[4] *Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS, 2012 WL 6044793, at *14 (D. Del. Nov. 13, 2012), report and recommendation adopted sub nom. *Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2013 WL 2295344 (D. Del. May 24, 2013).

put, NMS' limited and generic references to certain 3GPP standards and conclusory assertions that Defendants' products and processes willfully infringe and induce unidentified "third-party [network or lawful intercept] system providers and/or managers" to infringe "one or more claims," without any supporting details, fails the *Twombly* and *Iqbal* plausibility standard and should be dismissed.

### STATEMENT OF FACTS

NMS generically accuses Defendants of infringing the Patents-in-Suit via the adoption of technical standards released by 3GPP. (D.I. 4, ¶¶ 24–25, 27–28). NMS alleges that the '213, '968, and '688 Patents are "related to network alarm management technology," and that the '099 Patent "relates to lawful intercept technologies." (*Id.* at ¶¶ 13, 15). The Amended Complaints describe network alarm management generally as the managing of failures in a telecommunications network in order "to detect failures as soon as they occur and to limit their effects on the network quality of service as far as possible." (*Id.* at ¶ 9). NMS alleges that lawful intercept technology "includes the ability to monitor messages in data and/or communications networks" and is provided "to law enforcement agencies around the country." (*Id.* at ¶ 26). Other than generically describing these two communication network technologies, the Amended Complaints provide no description of the patents or their claims.

NMS then alleges in a conclusory fashion, and "upon information and belief," that certain technical standards released by 3GPP "incorporate the fundamental technologies covered by the Network Alarm Management Patents" and the "Lawful Intercept Patents."[5] (*Id.* at ¶¶ 24, 27). NMS, however, does nothing to explain the basis for that conclusory allegation. Instead, it

---

[5] Despite the reference to Lawful Intercept Patents (plural), the Amended Complaints identify and assert only one "Lawful Intercept *Patent*" (singular, namely the '099 Patent). (*Id.* at ¶¶ 14-16, 26-29).

purports to identify where the 3GPP standards allegedly can be found (*id.* at ¶ 19 (network alarm management) and ¶ 20 (lawful intercept standards)) [6] and refers to exemplary standards available on 3GPP's website. (*Id.*). These standards include references to numerous different aspects of network management technologies. (*Id.*). The Amended Complaints, however, are notably lacking any comparison or analysis of the 3GPP standards vis-à-vis the claims of the Patents-in-Suit.

And in an even more generic fashion, NMS includes a placeholder allegation regarding Defendants' 4G and LTE networks that appears to be for the purpose of including those networks amongst the accused products and services: "[u]pon information and belief, the 3GPP standards relating to 3G network alarm management systems and processes and 3G lawful intercept systems and processes also apply to 4G, and LTE telecommunications systems and networks." (*Id.* at ¶ 22).

Based on these threadbare allegations, NMS asserts four "Counts" in the Amended Complaints, each corresponding to a different patent and containing allegations of direct and indirect infringement. Paragraphs 33, 41, 49, and 57 constitute the entirety of Plaintiff's allegations of direct infringement and all are substantially the same, with only minor differences in paragraph 57 (which concerns the '099 Patent). Paragraphs 33, 41, and 49 allege:

> Upon information and belief, Defendants have been and are directly infringing the ['213, '968, or '688 Patents] under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making and/or using in this District and elsewhere within the United States, without authority, products and processes that include all of the limitations of at least claim 1 of the ['213, '968, or '688 Patents], including but not limited to, Defendants' network management systems (e.g., use of network alarm management systems by third-party system providers and/or proprietary technology made by Defendants, either alone or in combination as part of a complete network alarm

---

[6] It is noteworthy that the link to the exemplary lawful intercept standard, http://www.3gpp.org/DynaReport/33106-1.htm, directs one to a webpage that does not appear to refer to any specific standard. (*Id.* at ¶ 20).

management system) that incorporate the 3GPP standards for network alarm management, as set forth in at least the 3G Fault Management Specifications that include all of the limitations of one or more claims of the ['213, '968, or '688 Patents]. Additional details relating to the accused products and processes, and their infringement, are in the possession of Defendants.

(D.I. 4, ¶¶ 33, 41, 49).  Paragraph 57, which concerns the '099 Patent, is identical to paragraphs 33, 41, and 49, except that NMS substitutes "Defendants' network management systems . . . as set forth in at least the 3G Fault Management Specifications" with:

Defendants' data and communications intercept systems and/or services that incorporate the 3GPP standards for lawful intercept technologies, as set forth in at least the Lawful Intercept Specifications that include all of the limitations of one or more claims of the '099 Patent.

(*Id.* at ¶ 57).

The Amended Complaints do not identify any specific product or service of a defendant that allegedly infringes the Patent-in-Suit.  In fact, as pled, the Amended Complaints may be interpreted to accuse any and every product or service made or used by Defendants of infringing any one of the seventy claims contained in the Patents-in-Suit, so long as those unspecified products and services practice any 3GPP standard related to alarm management or lawful intercept.  (*See id.* at ¶¶ 31, 39, 47, 57 (accusing any of Defendants' products or processes that include "*all* of the limitations *of at least* [claim 1/claim 6,]" "*including but not limited to* [network management systems/data and communication intercept systems and/or services,]" that incorporate the 3GPP standards for network alarm management or lawful intercept, "as set forth in at least the [3G Fault Management/Lawful Intercept Specifications] that include all the limitations of one or more claims of [the Patents-in-Suit].")) (emphasis added).  In other words, NMS tries to take the shortcut of alleging that the scope of accused products includes all products that infringe.

NMS' allegations of indirect infringement are similarly conclusory and generic. Paragraphs 35, 43 and 51 constitute the entirety of Plaintiff's allegations of indirect infringement by inducement with respect to the Network Alarm Management Patents:

> Upon information and belief, . . . Defendants have actively induced, under U.S.C. § 271(b), third-party network system providers and/or managers to infringe one or more claims of the ['213 / '968 / '688] Patent. . . . Upon further information and belief, Defendants have been, and continue to be, involved in the development of 3GPP standards relating to network alarm management. The 3GPP standards, including the standards set forth in at least the 3G Fault Management Specifications, explicitly instruct telecommunication providers to use network alarm management products and/or processes in an infringing manner. Defendants intend to cause infringement by other telecommunications providers through implementation of the 3GPP standards for network alarm management. Upon information and belief, Defendants have taken affirmative steps to induce their infringement by, *inter alia*, continuing to support and contribute to the development of 3GPP standards for alarm network management, which have been and continue to be made available on 3GPP's website. By continuing to support the standards that they helped to develop, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

(D.I. 4, ¶¶ 35, 43 and 51). Paragraph 59 relates to the Lawful Intercept Patent and merely replaces the generic network alarm management references with references to lawful intercept technologies and specifications. (*Id*. at ¶ 59).

At no point does NMS provide an explanation of how any particular standard satisfies even a single claim limitation, let alone provide a basis for claiming that practicing the standard constitutes direct infringement. Likewise, NMS fails to identify any aspect or portion of Defendants' networks that practice any of the identified 3GPP standards or explain how the Defendants' implementation of those standards constitutes infringement.

NMS' Amended Complaints also include conclusory allegations that Defendants' acts of infringement have been willful. After pleading that Defendants had pre-suit notice of the respective patents (*e.g.*, *id*. at ¶ 34), Paragraphs 36, 44 and 52 constitute the entirety of Plaintiff's

allegations of willful infringement with respect to the Network Alarm Management Patents and allege:

> Upon information and belief, Defendants acts of infringement of the ['213, '968, or '688 Patents] have been willful and intentional. Since at least the above-mentioned date of notice, Defendants have acted with an objectively high likelihood that their actions constituted infringement of the ['213, '968, or '688 Patents] by refusing to take a license and continuing to make and/or use their network management systems and/or services that incorporate the 3GPP standards on network alarm management, and the objectively-defined risk was either known or so obvious that it should have been known.

(D.I. 4, ¶¶ 36, 44 and 52).   Paragraph 60 relates to the Lawful Intercept Patent and merely replaces the generic network alarm management references with references to lawful intercept technologies and specifications.   (*Id*. at ¶ 60).

## ARGUMENT

## I.    A PLEADING MUST ALLEGE ENOUGH FACTS TO STATE A PLAUSIBLE CLAIM

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see* Fed. R. Civ. P. 8(a)(2).   Although Rule 8 does not require "detailed factual allegations," "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.

To determine whether a pleading meets the Rule 8(a)(2) standard, the court conducts a two-part analysis.   First, the court identifies and disregards legal conclusions and factual allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679.   The court must also disregard "[t]hreadbare recitals of the elements of a

7

cause of action, supported by mere conclusory statements." *Id.* at 678; *see also Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements of a cause of action will not do").  The court only accepts as true all "well-pleaded factual allegations." *Iqbal*, 556 U.S. at 678–79.

Second, the court must decide "whether [the well-pleaded facts] plausibly give rise to an entitlement to relief." *Id.* at 679.  In determining whether a claim is plausible, the court must distinguish between allegations that are "merely consistent with" liability (in which case, the claim "stops short of" being plausible) and allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *McRo, Inc. v. Rockstar Games, Inc.*, C.A. No. 12-1513-LPS-CJB, 2014 WL 1051527, at *6 (D. Del. Mar. 17, 2014) (dismissing indirect infringement claims under *Twombly* and *Iqbal* because the "assertion of infringing use . . . [was] in reality little more than a rephrasing of a portion of the language of [the asserted claim].").  Sufficient facts must be alleged to "nudge" "claims across the line from conceivable to plausible" to survive a motion to dismiss.  *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678.  The court should not, however, "indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064–65 (9th Cir. 2008).

This standard has become even more clear since the recent amendments to the Federal Rules of Civil Procedure, which abrogated Form 18.  Unequivocally, infringement claims must satisfy the plausibility standard of *Twombly* and *Iqbal* to survive a motion to dismiss. *Raindance*, 2016 WL 927143, at *2.  Courts have recognized that a complaint should include a "coherent theory of which claims are allegedly infringed and how the accused products practice . . . each of those elements." *Atlas IP, LLC v. Exelon Corp.*, C.A. No. 15-10746, 2016 WL

2866134, at *5 (N.D. Ill. May 17, 2016).[7]  And a complaint that fails to plausibly allege that each element of an asserted claim is met should be dismissed.  *See Raindance*, 2016 WL 927143, at *2 (granting motion to dismiss where there was "nothing in the complaint … that hints at the role of [a claim element] in Defendant's [explicitly identified] products," and that "it does not appear . . . that [Plaintiff] has purchased one of Defendant's products to see how it actually works."); *Asghari-Kamrani v. United Servs. Auto. Ass'n*, C.A. No. 2:15-cv-478, 2016 WL 1253533, at *4 (E.D. Va. Mar. 22, 2016) (requiring allegations of direct infringement "to identify with sufficient particularity how each allegedly infringing feature of [the defendant's product] infringes the patent" for each claim that is allegedly infringed).

In a case where, as here, a plaintiff alleges that the practice of an industry standard infringes its patents, the plaintiff must show that any products which adopt the standard meet each of the limitations of the patent claims to prove infringement.  *Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).  Further, the use of a standard in place of a specific product in an infringement analysis is appropriate "[o]nly in the situation where a patent covers *every possible implementation* of a standard . . . ."  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) (emphasis added).

## II.   NMS' DIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED FOR FAILURE TO ALLEGE SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

NMS' direct infringement claims should be dismissed because NMS failed to allege sufficient facts to state a plausible claim for relief.  For example, NMS does not identify the

---

[7] *See also Incom Corp. v. The Walt Disney Co. et al.*, CV15-3011 PSG (MRWx), Civil Minutes – General, D.I. 39, at 4 (C.D. Cal. Feb. 4, 2016) (Ex. A) ("Defendants correctly note that '[m]erely naming a product and providing a conclusory statement that it infringes a patent is insufficient to meet the "plausibility" standard set forth in *Twombly* and *Iqbal*.'" (quoting *Medsquire LLC v. Spring Medical Sys., Inc.*, No. 2:11-cv-04504-JHN-PLA, 2011 WL 4101093, at *3 (C.D. Cal. Aug. 31, 2011)).

elements of even a single claim of any of the Patents-in-Suit, nor does it identify with any specificity a single accused product or process that satisfies all of the claim limitations. *Cf. Atlas IP LLC*, 2016 WL 1719545, at *3 (dismissing allegations of direct infringement because the complaint "recite[d] only some of the elements of the sole asserted claim"); *Raindance*, 2016 WL 927143, at *2 (granting motion to dismiss where there was "nothing in the complaint . . . that hints at the role of [a claim element] in Defendant's [explicitly identified] products."). The allegedly infringing products and processes here are "Defendants' network management systems (*e.g.*, use of network alarm management systems by third-party system providers *and/or* proprietary technology made by Defendants, *either alone or in combination* as part of a complete network alarm management system)" and "data and communication intercept systems and/or services that incorporate the 3GPP standards for lawful intercept technologies." (D.I. 4, ¶¶ 33, 41, 49, 57) (emphasis added). Essentially, NMS appears to allege that any of Defendants' unspecified products or services infringes any claim of the Patents-in-Suit by incorporating any 3GPP standard related to network alarm management or lawful intercept, so long as that standard includes all of the limitations of any claim of the Patents-in-Suit. Moreover, these sections of the 3GPP standards relate to numerous different technological aspects of network management and lawful intercept, such that NMS's claims are hopelessly vague. NMS's allegations are entirely circular – NMS fails to identify even a general class of products or methods. *See Eidos Commc'ns, LLC v. Skype Techs. SA*, 686 F. Supp. 2d 465, 467 (D. Del. 2010) (dismissing direct infringement allegations directed to defendant's "communication system products and/or methodologies" for failing to provide a general product category); *see also Via Vadis, LLC v. Skype, Inc.*, C.A. No. 11-507, 2012 WL 261367, at *1 (D. Del. Jan. 27, 2012) (holding that direct infringement allegations were insufficient where directed to defendants' "SKYPE peer-to-peer

voice over internet protocol ('VOIP') communications systems, methods, products and services, which are available through computers, such as desktop and laptop computers, communications devices, such as telephone and mobile devices and other devices, such as gaming systems and television systems").   In short, NMS's allegations, which amount to nothing more than an allegation of any product or service that practices a standard that meets the claim limitations, are insufficient under *Twombly* and *Iqbal*.  *See Fifth Market, Inc. v. CME Group, Inc.*, C.A. No. 08-520 GMS, 2009 WL 5966836, at *1 (D. Del. May 14, 2009) (granting motion to dismiss because plaintiff defined the allegedly infringing products and methods as those "covered by the claims of the asserted patents").

NMS' conclusory allegation that certain 3GPP standards "incorporate the fundamental technologies" of the Patents-in-Suit does not save the Amended Complaints from dismissal. (D.I. 4, ¶¶ 24, 27).[8]  NMS has not alleged how any specific 3GPP standard infringes its claim, or how the Defendants' adoption of those standards necessarily results in infringement.  *See Fujitsu, Ltd.*, 620 F.3d at 1327 (affirming grant of summary judgment that plaintiff had not shown that practice of the standard resulted in infringement).  Here, NMS fails to identify *any* 3GPP standard that allegedly infringes the Patents-in-Suit.  Although it provides the names and versions of certain 3GPP specifications that it contends are exemplary of the types of technical specifications available on the 3GPP website (*see* D.I. 4, ¶¶ 19–20), it does not identify which of these standards, if any, necessarily infringe the Patents-in-Suit or how they allegedly would do so as implemented by Defendants.  Because the Amended Complaints fail to shed light on how any 3GPP standard practices any of the claims of the Patents-in-Suit, let alone how those standards meet each and every element of the claims, NMS fails to "connect the dots" between the Patents-

---

[8] It is noteworthy that NMS' allegations in this regard are merely upon information and belief.

in-Suit and the allegedly infringing standards.  *See Zoetis LLC v. Roadrunner Pharmacy, Inc.*, No. CV 15-3193, 2016 WL 755622, at *5 (D.N.J. Feb. 25, 2016) ("At the very least, [plaintiff] must connect the dots between [the alleged infringer's] product and the `899 patent."); *see also Raindance*, 2016 WL 9271431, at *2 ("Plaintiff makes no attempt to relate any [of] their factual assertions with any of the asserted claims."); *Asghari-Kamrani*, 2016 WL 1253533, at *4 (dismissing allegations of direct infringement because the plaintiff failed to allege how identified features of the defendant's website allegedly infringed the patents-at-issue).  Instead, NMS merely alleges, with no factual support whatsoever, that "[u]pon information and belief, the standards released by 3GPP . . . incorporate the fundamental technologies covered by the [Patents-in-Suit]" and those standards collectively "include all of the limitations of one or more claims of the [Patents-in-Suit]."  (D.I. 4, ¶¶ 24, 27, 33).

The Amended Complaints here allege significantly fewer facts than the amended complaint in *Raindance* that this Court found to be insufficient.  *See, e.g.*, *Raindance*, C.A. No. 15-152 (RGA) First Amended Complaint (D.I. 12) at ¶¶ 15-21 (discussing accused products' technology from defendants' promotional materials); *Raindance*, 2016 WL 9271431.  There, the plaintiff supported its infringement allegations with evidence referencing statements on the defendant's website and from its promotional materials.  Here, NMS merely relies on generic "information and belief" allegations that refer to standards and the apparent assumption that all of the referenced standards have been implemented by the Defendants, and that those standards satisfy the claim limitations of at least claim 1 of the '213, '968 and '688 Patents and claim 6 of the '099 Patent.  The Amended Complaints are wholly lacking with respect to an explanation of why the standards satisfy the claim limitations and how those standards are implemented by Defendants in an infringing manner.  This Court found the allegations in *Raindance* to be

insufficient, among other reasons, because the plaintiff did not address *one* of the claim elements. *Raindance*, 2016 WL 9271431, at *2. Here, NMS has failed to allege how *any* 3GPP standard relates to *any* of the elements of *any* of its claims. As such, NMS' allegations do not suffice to state a plausible claim for relief and should be dismissed.

### III.    NMS' INDIRECT INFRINGEMENT CLAIMS ARE EQUALLY FLAWED

NMS' indirect infringement claims should likewise be dismissed because they fail to allege sufficient facts to state a plausible claim for relief. "To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, C.A. No. 14-1268-SLR, 2016 WL 2904593, at *4 (D. Del. May 18, 2016); *citing Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotations omitted). In the absence of an underlying act of direct infringement, there is no claim for indirect infringement. *See Endo Pharm. Inc. v. Actavis Inc.*, C.A. No. 14-1381-RGA, 2015 WL 5580488, at *3 (D. Del. Sept. 23, 2015), *report and recommendation adopted,* C.A. No 14-1381-RGA, 2015 WL 7253674 (D. Del. Nov. 17, 2015) ("As a precursor to stating a claim for indirect infringement, inducement, or contributory infringement, a plaintiff must 'plead[ ] facts sufficient to allow an inference that at least one direct infringer exist[].'"); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Additionally, for purposes of alleging inducement, if a plaintiff is unable to specifically identify a direct infringer, it must at least "plead[] facts sufficient to allow an inference that at least one direct infringer exists." *Endo,* 2015 WL 5580488, at *2.

First, NMS has failed to sufficiently allege direct infringement of a single Defendant (as discussed in § II), no less a third party that plausibly was "induced" into infringing by Defendants. The closest that NMS comes to identifying a third party for purposes of indirect

infringement is by stating "Defendants have actively induced . . . third-party [network / lawful intercept] systems providers and/or managers to infringe one or more claims" of the Patents-in-Suit.  (D.I. 4, ¶¶ 35, 43, 51 and 59).  However, such threadbare allegations are not sufficient to allow an inference that at least one direct infringer exists.  *See MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012) ("The court 'need not accept as true threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'") (internal citations omitted); *see also M2M Solutions LLC v. Telit Comm'ns PLC*, 2015 WL 4640400, *4-*5 (D. Del. 2015).  Unlike cases where the connection between the inducer and the alleged third party infringer are apparent, such as between a retailer and its customer, NMS describes an unidentifiable group of third parties.  NMS simply fails to plead facts sufficient to allow a reasonable inference as to the identity of a third party direct infringer.

Second, NMS fails to set forth sufficient allegations or facts to identify how any third party infringes any claim of the Patents-in-Suit.  Instead, the Amended Complaints contain only conclusory allegations that simply mimic the elements for induced infringement.  The only attempt at setting forth allegations of direct infringement are against Defendants themselves, but that cannot support a claim for indirect infringement.  *See Ondeo Nalco Co. v. EKA Chemicals, Inc.*, C.A. No. 01-537-SLR, 2002 WL 1458853, at *1 (D. Del. June 10, 2002) (dismissing counterclaims where "the pleadings fail to allege direct infringement by a party other than [the counter-defendant].");  *Fuzzysharp Techs. Inc. v. NVIDIA Corp.*, No. 12-CV-06375-JST, 2013 WL 2249707 (N.D. Cal. Apr. 18, 2013) (same).

By failing to identify a third party direct infringer that has been induced and the act(s) of direct infringement that were induced by Defendants, among other deficiencies, the Amended

Complaints fail to state a plausible claim for induced infringement and NMS' indirect infringement claims should be dismissed.

## IV.   NMS' WILLFUL INFRINGEMENT CLAIMS SUFFER FROM THE SAME DEFICIENCIES

NMS's willful infringement allegations and corresponding claim for enhanced damages under 35 U.S.C. § 284 also should also be dismissed for two reasons.  First, NMS has not properly stated a claim for infringement and, therefore, it cannot maintain a claim for willful infringement.  Second, the willful infringement allegations in the Amended Complaints suffer from the same deficiencies as the direct and indirect infringement allegations.

The Supreme Court recently rejected the traditional two-part test for a finding of willful infringement and the award of enhanced patent damages that was set forth in *In Re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007).  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. ___, 136 S. Ct. 1923 (2016).  In doing away with the *Seagate* willfulness test, the Supreme Court in *Halo* emphasized that enhanced damages are a "punitive" sanction that generally should be reserved for "egregious cases typified by willful misconduct."  *Id.* at 1934.  While the *Halo* decision broadened a district court's discretion to award enhanced damages, it did not change the rule that patent infringement claims, including willfulness claims, must be adequately pled.

Here, NMS has not pled any facts to suggest that this is an "egregious case" and that Defendants engaged in "willful misconduct."  In fact, as the exemplary language below demonstrates, the lone paragraph of the Amended Complaints setting forth the willfulness allegations for each Patent-in-Suit makes unsupported, conclusory statements and simply parrots the language of the *Seagate* willfulness test:

> Upon information and belief, Defendant's acts of infringement of the '213 Patent have been willful and intentional. Since at least the above-mentioned date of notice, Defendants have acted with an objectively high likelihood that their actions constituted infringement of the '213 Patent by refusing to take a license and continuing to make

15

and/or use their network management systems and/or services that incorporate the 3GPP standards on network alarm management, and the objectively-defined risk was either known or so obvious that it should have been known.

(D.I. 4, ¶ 36).   As noted above, this type of threadbare allegation that merely recites a legal standard supporting a cause of action is not sufficient to provide an inference that Defendants' conduct is willful or egregious.   *See MONEC Holding AG*, 897 F. Supp. 2d at 229.   Thus, all allegations of willful infringement and corresponding claims for enhanced damages should be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court dismiss Network Managing Solutions' First Amended Complaint in each of the actions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____
Karen Jacobs (#2881)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
jying@mnat.com

*Attorneys for Defendants Sprint Corporation and Sprint Spectrum L.P.*

ROSS ARONSTAM & MORITZ LLP

*/s/ Benjamin J. Schladweiler*

_____
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
bschladweiler@ramllp.com

*Attorneys for Defendant T-Mobile USA, Inc.*

OF COUNSEL:

Joshua C. Krumholz
Jacob K. Baron
Mark T. Goracke
Yasmin Ghassab
HOLLAND & KNIGHT LLP
10 St. James Avenue
11th Floor
Boston, MA  02116
(617) 523-2700

SHAW KELLER LLP

*/s/ Andrew E. Russell*
_____

John W. Shaw (#3362)
Andrew E. Russell (#5382)
300 Delaware Avenue
Suite 1120
Wilmington, DE  19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorneys for Defendants AT&T Inc. and*
*AT&T Mobility LLC*


OF COUNSEL:

L. Norwood Jameson
Matthew S. Yungwirth
S. Neil Anderson
DUANE MORRIS LLP
1075 Peachtree St. NE
Suite 2000
Atlanta, GA  30309-3929
(404) 253-6900
wjameson@duanemorris.com
msyungwirth@duanemorris.com
snanderson@duanemorris.com

*Attorneys for Defendants AT&T Inc. and*
*AT&T Mobility LLC*

joshua.krumholz@hklaw.com
jacob.baron@hklaw.com
mark.goracke@hklaw.com
yasmin.ghassab@hklaw.com


RICHARDS, LAYTON & FINGER, P.A.

*/s/ Steven J. Fineman*
_____

Steven J. Fineman (#4025)
Katharine L. Mowery (#5629)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
mowery@rlf.com

*Attorneys for Defendant United States Cellular*
*Corporation d/b/a U.S. Cellular*

OF COUNSEL:

Douglas I. Lewis
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
dlewis@sidley.com

John P. Wisse
SIDLEY AUSTIN LLP
2001 Ross Ave. Suite 3600
Dallas, TX 75201
(214) 981-3425
jwisse@sidley.com

*Attorneys for Defendant United States Cellular
Corporation d/b/a U.S. Cellular*

July 11, 2016