IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NETWORK MANAGING SOLUTIONS, LLC<br><br>Plaintiff,<br><br>v.<br><br>AT&T, INC.[1] and AT&T MOBILITY LLC,<br><br>Defendants. | CIVIL ACTION NO. 16-295-RGA<br><br>JURY TRIAL DEMANDED |
| NETWORK MANAGING SOLUTIONS, LLC<br><br>Plaintiff,<br><br>v.<br><br>SPRINT CORPORATION and SPRINT SPECTRUM L.P.,<br><br>Defendants. | CIVIL ACTION NO. 16-296-RGA<br><br>JURY TRIAL DEMANDED |
| NETWORK MANAGING SOLUTIONS, LLC<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | CIVIL ACTION NO. 16-297-RGA<br><br>JURY TRIAL DEMANDED |

---

[1] AT&T Inc. is and always has been only a holding company. As a holding company, AT&T Inc. conducts no business with the public and is not the proper entity for the conduct alleged in this case. AT&T Inc. does not design, make, use, sell, offer for sale or import any products. AT&T Inc. is, legally and factually, a separate entity that is distinct from its subsidiaries and affiliates. The proper corporate defendant in this case should be AT&T Mobility LLC. However, AT&T Inc. joins in this Discovery Order because it currently is a defendant in this case.

| | |
|---|---|
| NETWORK MANAGING SOLUTIONS, LLC | ) CIVIL ACTION NO. 16-298-RGA ) ) |
| Plaintiff, | ) ) |
| v. | ) JURY TRIAL DEMANDED ) |
| UNITED STATES CELLULAR CORPORATION, | ) ) ) ) |
| Defendant. | ) ) |
| NETWORK MANAGING SOLUTIONS, LLC | ) ) CIVIL ACTION NO. 16-299-RGA ) |
| Plaintiff, | ) ) |
| v. | ) JURY TRIAL DEMANDED ) |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | ) ) ) |
| Defendant. | ) ) |

## STIPULATED ORDER REGARDING DISCOVERY, INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")

**1. General Provisions**

    a. **Cooperation**. Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement.

    b. **Proportionality**. Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[2] This includes identifying appropriate limits to discovery, including limits on custodians, identification of

---

[2] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

2

relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

c. **Preservation of Discoverable Information**. A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

(i) Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

(ii) Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

d. **Privilege**.

(i) The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

(ii) With respect to information generated after February 14, 2013, parties are not required to include any such information in privilege logs, including information that pertains to NMS's predecessor, Network Management Solutions, LLC and Wi-LAN, Inc.

(iii) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(iv) Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of

a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

**2. Initial Discovery Conference.**

    a. **Timing.** Consistent with the guidelines that follow, the parties have discussed the parameters of their anticipated discovery during the initial discovery conference (the "Initial Discovery Conference") pursuant to Fed. R. Civ. P. 26(f), held on April 12-13, 2017.

    b. **Content.** The parties shall discuss the following:

        (i) The issues, claims and defenses asserted in the case that define the scope of discovery.

        (ii) The likely sources of potentially relevant information (i.e., the "discoverable information"), including witnesses, custodians and other data sources (e.g., paper files, email,[3] databases, servers, etc.).

        (iii) Technical information, including the exchange of production formats.

        (iv) The existence and handling of privileged information.

        (v) The categories of ESI that should be preserved.

3. **Initial Disclosures.** Within 30 days after entry of the Scheduling Order, each party shall disclose:

    a. **Custodians.** Up to 10 custodians most likely to have discoverable information in their possession, custody or control. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

    b. **Non-custodial data sources.**[4] A list of the non-custodial data sources that are most

---

[3] Email production is subject to Section 5.b below.
[4] That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

4

likely to contain non-duplicative discoverable information for preservation and production consideration.

    c. **Notice**. The parties shall identify any issues relating to:

        (i) Any ESI (by type, date, custodian, electronic system or other criteria) of which a party is aware and asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

        (ii) Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

        (iii) Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

## 4. Initial Discovery in Patent Litigation.[5]

    a. By June 13, 2017 and for each defendant,[6] the plaintiff shall specifically identify the accused products[7] and the asserted patent(s) they allegedly infringe, and produce the file history for each asserted patent.

    b. By July 28, 2017, each defendant shall produce to the plaintiff the core technical documents related to the accused product(s), including but not limited to operation manuals, product literature, schematics, and specifications.

    c. By September 15, 2017, plaintiff shall produce to each defendant an initial claim

---

[5] As these disclosures are "initial," each party shall be permitted to supplement.
[6] For ease of reference, "defendant" is used to identify the alleged infringer and "plaintiff" to identify the patentee.
[7] For ease of reference, the word "product" encompasses accused services, methods and systems as well.

5

chart relating each accused product to the asserted claims each product allegedly infringes.

d. By November 9, 2017, each defendant shall produce to the plaintiff its initial invalidity contentions for each asserted claim, as well as the related invalidating references (e.g., publications, manuals and patents).

e. Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

### 5. Specific E-Discovery Issues.

a. **On-site inspection of electronic media.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b. **Electronic Mail.** The parties will delay search and production of electronic mail and electronic mail documentation ("Secondary Documents"). If, at such time as the receiving party has reviewed the contents of the producing party's primary document production, the receiving party determines that Secondary Documents may be required, the receiving party may indicate such determination to the producing party. Upon such determination, the producing party and receiving party shall meet and confer in good faith to identify which particular documents will be searched and to identify reasonable mechanisms for narrowly tailored searches of, or for, such Secondary Documents. If, after the aforementioned meet and confer, the parties have not been able to resolve their issue(s) pertaining to the production of Secondary Documents, the parties agree to submit to the Court for determination (i) their competing positions on whether or not the information sought is available in a less burdensome manner, and (ii) their respective mechanisms for

narrowly tailored searches of Secondary Documents, including an identification of a specific number of requests, custodians, and search terms per Section 5.c below. Notwithstanding the foregoing, if a Producing Party intends to rely on any Secondary Documents from an individual, the Producing Party must produce all relevant Secondary Documents from that individual.

 c. **Search methodology.** If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party. Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with electronic searching. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. A conjunctive or otherwise limiting combination of multiple words or phrases (e.g., "computer" and "system"; "computer" /10 "system"; "computer" but not "system") narrows the search and will count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase will count as a separate search term unless the words or phrases are variants or synonyms of the same word or phrase. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and will be considered when determining whether to shift costs for disproportionate discovery. The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) emails and other ESI (where applicable under paragraph 5(b)) maintained by the custodians identified in accordance with paragraph 3(a).

 d. **Format.** ESI and non-ESI shall be produced to the requesting party as text searchable image (e.g., PDF or TIFF) or native files. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

The parties shall produce their non-native files in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

If images cannot be produced legibly in TIFF or JPEG format, they will be produced in high resolution PDF format, unless the producing party elects to produce the document(s) solely in native format.

For good cause, a party that receives a document produced in a format specified in Paragraph 5(d) may make a reasonable request to have the document reproduced in its native format. Upon the showing of good cause, the producing party shall reproduce the document in its native format.

Documents originating in electronic format (including but not limited to Excel files, .txt files, and media files) that are produced in native format shall be labeled with a unique production number and produced with a slipsheet indicating that the document was produced in native format and containing the appropriate confidentiality designation.

e. **Native Files**. The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files.

f. **Metadata fields.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian,[8] File Path, Email Subject, Conversation Field/Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

Dated: June 13, 2017

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
302-777-0300 Telephone
302-777-0301 Facsimile
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorney for Plaintiff*

POLSINELLI PC

/s/ Shanti M. Katona
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
302-252-0924

Respectfully submitted,

SHAW KELLER LLP

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
jcastellano@shawkeller.com
arussell@shawkeller.com

*Attorneys for Defendants AT&T, Inc. and AT&T Mobility LLC*

ROSS ARONSTAM &MORITZ LLP

/s/ Benjamin J. Schladweiler
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600

---

[8] To the extent that a party chooses to de-duplicate documents prior to production, a field shall identify all other custodians from whom the same document was collected.

9

skatona@polsinelli.com

*Attorneys for Defendants Sprint Corporation and Sprint Spectrum L.P.*

RICHARDS, LAYTON & FINGER, P.A.

/s/ Katharine L. Mowery
Steven J. Fineman (#4025)
Katharine L. Mowery (#5629)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
mowery@rlf.com

*Attorneys for Defendant United States Cellular Corporation*

bschladweiler@ramllp.com

*Attorneys for Defendants T-Mobile USA, Inc. and Cellco Partnership d/b/a Verizon Wireless*

IT IS SO ORDERED, this ___13___ day of __June 2017__.

_____
Honorable Judge Richard G. Andrews

## SCHEDULE A

1.  Deleted, slack, fragmented, or other data only accessible by forensics.

2.  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.  On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.  Data in metadata fields that are frequently updated automatically, such as last opened dates.

5.  Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6.  Voice messages.

7.  Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8.  Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9.  Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.